## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Guy A. Shaked Investments, Ltd., et al. Plaintiffs, | Case No.: 1:20-cv-09901-RMB-AMD |
| v. | Hon. Renée Marie Bumb<br>Hon. Elizabeth A. Pascal |
| Ontel Products Corporation, Defendant. | Motion Day: January 3, 2023 |
| | Oral Argument Requested Pursuant to L.R. 78.1 |

## DEFENDANT'S MOTION FOR PARTIAL
## SUMMARY JUDGMENT OF NON-
## <u>INFRINGEMENT OF U.S. PATENT NO. 9,578,943</u>

# TABLE OF CONTENTS

I.   INTRODUCTION ...........................................................................1

II.  STATEMENT OF MATERIAL FACTS NOT IN DISPUTE...................3

III. RELEVANT BACKGROUND.........................................................7

    A.   Dafni Dismissed the Previously-Asserted '906 and '562 Patents, Leaving this Case to Proceed Solely on the '943 Patent and the '007 Design Patent. ...................................................................................7

    B.   Dafni Amended All Previously-Asserted Claims and Added New Claims During the '943 EPR to Overcome the USPTO's Prior Art Rejections. .................................................................................9

    C.   Dafni Refuses to Drop Its '943 Patent Infringement Claim Despite Knowing that Ontel Ceased Manufacturing and Selling the Accused Simply Straight Products Prior to Issuance of the '943 Patent Reexamination Certificate. ..........................................................12

IV.  ARGUMENT.............................................................................17

    A.   Summary Judgment Legal Standard. ................................................17

    B.   Intervening Rights Legal Standard......................................................18

    C.   Ontel is entitled to Summary Judgment under the Intervening Rights Doctrine Because Plaintiffs Substantively Amended the Asserted Claims of the '943 Patent During Reexamination. ......................................................20

    D.   Dafni's Proposed Reliance on Claims 4 and 10 Does Not Save Its Meritless Infringement Claim Based on the Reexamined '943 Patent. ........23

V.   CONCLUSION ............................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................. 17, 18

*Aylus Networks, Inc. v. Apple Inc.*,
856 F.3d 1353 (Fed. Cir. 2017)..................................................15

*Bloom Eng'g Co. v. N. Am. Mfg. Co.*,
129 F.3d 1247 (Fed. Cir. 1997)............................................19

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)......................................17

*CUPP Computing AS v. Trend Micro Inc.*,
2022 WL 16954357 (Fed. Cir. Nov. 16, 2022)..................................................15

*Eberle v. Harris*,
2010 WL 6281563 (D.N.J. June 30, 2010) ........................................20

*Electro Med. Sys. v. Cooper Life Sciences, Inc.*,
34 F.3d 1048 (Fed. Cir. 1994)................................................20

*Laitram Corp. v. NEC Corp.*,
163 F.3d 1342 (Fed. Cir. 1998)................................................ 19, 20, 23

*LMT Mercer Grp., Inc. v. Maine Ornamental, LLC*,
2014 WL 284238 (D.N.J. Jan. 24, 2014) ...........................................23

*Marine Polymer Technologies, Inc. v. HemCon, Inc.*,
672 F.3d 1350 (Fed.Cir.2012)(en banc .......................................... 18, 19

*MonoSol Rx, LLC v. Biodelivery Scis. Int'l, Inc.*,
2015 WL 5679891 (D.N.J. Sept. 25, 2015) ................................................. passim

*R+L Carriers, Inc. v. Qualcomm, Inc.*,
801 F.3d 1346 (Fed. Cir. 2015).........................................................25

*Seattle Box Co. v. Industrial Crating & Packing, Inc.*,
731 F.2d 811, 221 USPQ 568 (Fed. Cir. 1984) ...................................................19

*Taylor v. Phoenixville Sch. Dist.*,
    184 F.3d 296 (3d Cir.1999) ...................................................................................17

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
    789 F.3d 1335 (Fed. Cir. 2015) ..........................................................................14

## **<u>Statutes</u>**

35 U.S.C. § 252 ............................................................................................... 12, 23

35 U.S.C. § 271 .............................................................................................. 1, 6, 23

35 U.S.C. § 307 ............................................................................................ 18, 19, 23

## I.   INTRODUCTION

The basis for Ontel's Motion for Partial Summary Judgment ("Motion") is simple and clear. The U.S. Patent and Trademark Office's ("USPTO") reexamination of U.S. Patent No. 9,578,943 (the "'943 Patent") eradicated any legitimate basis for Plaintiffs Guy A. Shaked Investments, Ltd. and Dafni Hair Products, Ltd. (collectively, "Dafni") to maintain an infringement claim against Ontel based on the '943 Patent. Prior to the conclusion of the '943 Patent's reexamination before the USPTO, Dafni alleged that Ontel infringed original claims 1-3, 6, 8, 9, and 11-19 by making, using, selling, and/or importing the accused Simply Straight Ceramic Straightening Brush.[1] During reexamination, however, Dafni substantively amended each and every one of these asserted claims to purportedly differentiate them from various prior art references. Dafni made such changes to the language and scope of the original claims in order to secure their patentability over the prior art.

As all of the previously-asserted original claims of the '943 Patent were found to be unpatentable, Ontel cannot infringe them as a matter of law. Absolute

---

[1] To be clear, Dafni initially asserted that Ontel infringed original claims 1-4, 8, 9, 11, 12, and 15-21 under "35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States" the Simply Straight brush. (Dkt. No. 5, Complaint at ¶47.) Dafni thereafter dropped its infringement allegations relating to original claims 4, 20, and 21 and added infringement allegations relating to original claims 6, 13, and 14. (*See* Dkt. No. 138-1, Dafni's 9/17/2021 Amended Infringement Contentions at 5.)

intervening rights allow Ontel (and anyone else) to freely use or sell a product that was made, used, or purchased before the USPTO issued the '943 Patent's reexamination certificate in July 2022, as long as such activity does not infringe a claim of the reexamined patent that was included in the original patent. Moreover, because Ontel ceased manufacturing, importing, and selling the accused Simply Straight products prior to issuance of the '943 Patent's reexamination certificate, Dafni has no basis to continue asserting infringement of either the substantively-amended or newly-added claims of the '943 Patent. Dafni also cannot seek pre-reexamination damages in connection with any previously-asserted claim of the '943 Patent, as none of those claims emerged from reexamination without amendment.

Facing such facts and blackletter law, Dafni now attempts to assert infringement of two claims (*i.e.*, 4 and 10) it previously determined Ontel did not infringe—as demonstrated by Dafni's failure to include allegations relating to such claims in its September 2021 infringement contentions. Dafni's belated assertion of these claims at this stage—after all of its previously-asserted claims were extinguished—fails to save its '943 Patent infringement allegations. First, with respect to claim 10, it is clear that Dafni's reexamination amendments substantively changed the scope of the claim by modifying the claim language in an attempt to circumvent claim-dependency and indefiniteness issues present in the original claim—issues that, in addition to clear infringement-related shortcomings, help

explain Dafni's failure to previously assert claim 10 in this action. With respect to claim 4 on the other hand, Dafni made representations during the '943 Patent's reexamination and the *inter partes* review ("IPR") proceeding in connection with related and previously-asserted U.S. Patent No. 9,591,906 that belie Dafni's new infringement assertion and render its attempted assertion both futile and frivolous. As detailed below, the positions Dafni took during the USPTO proceedings—to preserve claim validity—demonstrate why Dafni affirmatively withdrew its infringement allegation based on claim 4 prior to its September 2021 infringement contentions.

Because Ontel has not committed any alleged acts of infringement after the issuance of the '943 Patent's reexamination certificate and because Dafni lacks a basis to assert any *non*-substantively amended claim, the Court should grant Ontel's Motion and enter an order dismissing Count II of the Corrected First Amended Complaint.

## II.   STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.   As originally filed on December 20, 2015, the patent application that later issued as U.S. Patent No. 9,578,943 ("the '943 Patent") included 12 claims. (**Exhibit I**, Originally-Filed Claims of U.S. Patent Application No. 14/975,783.)

2.      On May 25, 2016, the USPTO rejected all 12 originally-filed claims of U.S. Patent Application No. 14/975,783. (**Exhibit J**, USPTO May, 25, 2016 Office Action at 1.)

3.      Following the USPTO's rejection of application claims 1-12, Dafni amended application claims 1-10, canceled application claims 11-12, and added new claims 13-23 on October 10, 2016. (**Exhibit K**, Dafni October 10, 2016 Amendment at 2-6.)

4.      The USPTO thereafter issued a notice of allowance in connection with pending application claims 1-10 and 13-23, which would later issue as original claims 1-21 of the '943 Patent. (**Exhibit L**, USPTO December 16, 2016 Notice of Allowance.)

5.      As originally issued by the USPTO on February 28, 2017, the '943 Patent included 21 claims. (Dkt. No. 158-2, '943 Patent 6:31-8:4.)

6.      On June 14, 2021, the USPTO granted Ontel's request to institute *ex parte* reexamination ("EPR") of claims 1-19 of the '943 Patent based on its determination that Ontel's request raised a "substantial new question of patentability affecting [the challenged claims]." (**Exhibit A**, Order Granting Request for *Ex Parte* Reexamination at 2**.**)

7.      On December 1, 2021, the Court granted Ontel's Motion to Stay (Dkt. No. 115) this action pending resolution of the '943 Patent EPR. (Dkt. No. 126.)

8.      Immediately prior to the Court's stay of this action in December 2021, Dafni asserted that Ontel has infringed claims 1-3, 6, 8, 9, and 11-19 of the '943 Patent. (**Exhibit M**, Dafni's September 17, 2021 Infringement Contentions at 5.)

9.      During the '943 Patent EPR, Dafni amended originally-independent claims 1 and 15 and originally-dependent claims 4, 7, and 10. (**Exhibit E**, U.S. Pat. No. 9,578,943 Reexamination Certificate.) Original '943 Patent claims 2, 3, 5, 6, 8, 9, 11-14, and 16-19 were determined to be patentable based on their dependency on either amended independent claim 1 or amended independent claim 15. (*Id.*)

10.      During the '943 Patent EPR, Dafni added new claims 22-91. (**Exhibit E**, U.S. Pat. No. 9,578,943 Reexamination Certificate.)

11.      During the '943 Patent EPR, each allegedly-infringed claim of the '943 Patent set forth in Dafni's September 2021 infringement contentions—*i.e.*, original '943 Patent claims 1-3, 6, 8, 9, and 11-19—was substantively amended, either directly or based on its dependency from claims 1 or 15. (*See* **Exhibit E**, U.S. Pat. No. 9,578,943 Reexamination Certificate and **Exhibit M**, Dafni's September 17, 2021 Infringement Contentions at 5.)

12.      On July 8, 2022, the USPTO issued an *ex parte* reexamination certificate in connection with the reexamined claims of the '943 Patent. (**Exhibit E**, U.S. Pat. No. 9,578,943 Reexamination Certificate.)

13.　　On August 4, 2022, the Court lifted the stay of the action in view of the conclusion of the '943 Patent EPR. (Dkt. No 134.)

14.　　Dafni now asserts that Ontel has infringed claims 1-4, 6, 8-19, 22-33, 38-39, 41-43, 46-47, 49-50, 54-60, 62-68, 73-74, 76-78, 81-82, 84-85, and 89-91 of the reexamined '943 Patent "pursuant to 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States the SIMPLY STRAIGHT brush." (Dkt. No. 158, Corrected First Amended Complaint at ¶45.)

15.　　Dafni's September 2021 infringement contentions did not include any allegation that Ontel had infringed dependent claims 4 or 10 of the original '943 Patent. (**Exhibit M**, Dafni's September 17, 2021 Infringement Contentions at 5.)

16.　　Ontel placed, with its manufacturing partner, its last purchase order for the manufacture of the accused Simply Straight products on June 7, 2016. (Kinsey Declaration at ¶3.)

17.　　Ontel received its final shipment of the accused products, from Ontel's manufacturing partner, on September 17, 2016. (Kinsey Declaration at ¶4.)

18.　　Ontel's last sale of any version of the accused Simply Straight products took place on November 30, 2021 and Ontel has not sold or offered to sell any version of the accused products since that date. (Kinsey Declaration at ¶5.)

## III.   RELEVANT BACKGROUND

### A. Dafni Dismissed the Previously-Asserted '906 and '562 Patents, Leaving this Case to Proceed Solely on the '943 Patent and the '007 Design Patent.

This case initially involved three related utility patents directed to heated hairbrushes: U.S. Patent No. 9,591,906 ("the '906 Patent"), U.S. Patent No. 9,578,943 ("the '943 Patent"), and U.S. Patent No. 9,877,562 ("the '562 Patent"). All three of these patents share the same specification and drawings and have claims of similar scope, which use many of the same claim terms. After Dafni initiated this action, Ontel filed IPR petitions covering all of the asserted claims at issue in this litigation. On December 2, 2020, the Parties stipulated to a stay pending resolution of the IPRs, agreeing that such a stay would "conserve the Parties' and this Court's resources." (Dkt. No. 84.) The Court then issued an order administratively terminating this action pending resolution of the IPRs. (Dkt. No. 85.)

On April 13, 2021, the Patent Trial and Appeal Board ("PTAB") instituted IPRs in connection with the '906 and '562 Patents, and declined to institute an IPR of the '943 Patent on a procedural basis. (Dkt. No. 90-1.) Following this decision with respect to the '943 Patent, Dafni submitted a letter to the Court requesting an order lifting the stay of this action in exchange for Dafni's dismissal of its '906 and '562 Patent infringement claims with prejudice, thereby allowing this case to proceed solely on the '943 Patent and the '007 Design Patent. (Dkt. No. 90.) On

7

August 9, 2021, Dafni dismissed the '906 and '562 Patents with prejudice via a joint stipulation submitted by the Parties. (Dkt. No. 105.)

Dafni, however, later attempted to "un-do" its dismissal following the Court's subsequent order staying this case in light of the *ex parte* reexamination ("EPR") of the '943 Patent. Specifically, Ontel filed an EPR petition on May 24, 2021, challenging the validity of the claims of the '943 Patent. On June 14, 2021, the USPTO granted Ontel's request and instituted the '943 EPR, finding that Ontel's submitted references raised substantial new questions of patentability as to the claims of the '943 Patent. (**Exhibit A**, Order Granting Request for *Ex Parte Reexamination*.) As a result of the EPR, this Court ordered a stay of this action. (Dkt. No. 126.) Despite Dafni's efforts to re-insert the '906 and '562 Patents (after conclusion of the IPR proceedings) into the case following the EPR stay, the Court was able to "read between the lines" and ordered Dafni to file an amended complaint in conformity with its prior representations dismissing the '906 and '562 Patents with prejudice.[2] (Dkt. No. 153 at 6.) In accordance with the Court's ruling, as of November 3, 2022, this case involves only Dafni's infringement claims based on the '943 Patent and the '007 Design Patent. (Dkt. No. 158.)

---

[2] This Court also recognized the "strategic" timing of Dafni's request to reinstate the '906 and '562 Patents "comes following the conclusion of EPR proceedings of the '943 Patent before the USPTO, a result, Ontel contends, that leaves Dafni's remaining infringement claims in doubt." (Dkt. No. 153 at 4, fn. 2.)

**B. Dafni Amended All Previously-Asserted Claims and Added New Claims During the '943 EPR to Overcome the USPTO's Prior Art Rejections.**

On October 4, 2021, the USPTO issued the first Office Action in the '943 EPR proceeding, rejecting all challenged, original claims as unpatentable—including each and every patent claim then asserted in this litigation—*i.e.*, original claims 1-3, 6, 8, 9, and 11-19 of the '943 Patent ("Previously Asserted Claims"). (**Exhibit B**, '943 EPR First Office Action**.**) Specifically, the USPTO rejected both independent claims (*i.e.*, 1 and 15) as taught by three separate references or combinations of references: Choi, Hattori and Gress. (*See* **Exhibit B**.) As a result, Dafni was forced to substantively amend the Previously Asserted Claims to secure their patentability over such prior art.[3] (**Exhibit E**, U.S. Pat. No. 9,578,943 Reexamination Certificate.) Specifically, Dafni added additional narrowing limitations that changed not just the language of the claims, but their attendant scope as well. (*Id.*) By way of example, Dafni made the following amendments—depicted as italicized and underlined text—to independent claims 1 and 15 narrowing both their scope and that of their corresponding dependent claims:

---

[3] To be clear, Dafni amended asserted independent claims 1 and 15. All other Previously Asserted Claims (*i.e.*, 2, 3, 6, 8, 9, 11-14, and 16-19) depend from either claim 1 or 15 and therefore were also amended in view of the changes made to the independent claims.

Claim 1:

1. A hairbrush, comprising:

a heating plate extending over a face of the hairbrush;

a plurality of heating elements thermally coupled to the heating plate and protruding from only the face of the hairbrush, the plurality of heating elements defining a hair treating area disposed on at least a part of the hairbrush's face at a specified density, the plurality of heating elements arranged in a plurality of lengthwise rows, each of the plurality of lengthwise rows including a number of the plurality of heating elements, ***wherein a number of the heating elements in at least one of the lengthwise rows is different than a number of heating elements in at least one other of the lengthwise rows***;

wherein, for each of the plurality of lengthwise rows, the heating elements thereof are offset relative to the heating elements in an adjacent one of the plurality of lengthwise rows;

a plurality of heat insulating spacers projecting outwardly from at least some of the plurality of heating elements, thereby providing a space between the plurality of heating elements and a user's scalp during use; and

a plurality of heat insulating elongate peripheral spacers disposed at least around a portion of the hair treating area of the hairbrush.

Claim 15:

15. A hairbrush, comprising:

a plurality of heating elements protruding from a face of the hairbrush, the plurality of heating elements defining a hair treating area disposed on at least a part of the hairbrush's face at a specified density;

10

> wherein the plurality of heating elements define a plurality of lengthwise rows and a plurality of undulating paths therethrough in a direction transverse to the plurality of lengthwise rows, ***wherein a number of the heating elements in at least one of the lengthwise rows is different than a number of heating elements in at least one other of the lengthwise rows***;
>
> a plurality of heat insulating spacers projecting outwardly from at least some of the plurality of heating elements, thereby providing a space between the plurality of heating elements and a user's scalp during use; and
>
> a plurality of heat insulating elongate peripheral spacers disposed at least around a portion of the hair treating area of the hairbrush.

(*Id.*) The additional language, "wherein a number of the heating elements in at least one of the lengthwise rows is different than a number of heating elements in at least one other of the lengthwise rows," did not appear in any of the original claims. The insertion of this language unambiguously narrows the scope of the Previously Asserted Claims by adding a newly-required feature.

In addition to these substantive amendments to all Previously Asserted Claims, Dafni added 70 entirely new claims during reexamination. (*Id.*) Dafni also rewrote originally-dependent claims 4 and 10—neither of which was asserted against Ontel in Dafni's September 2021 infringement contentions—in independent form in order to secure their patentability over prior art. In view of Dafni's claim amendments, the USPTO allowed the amended and new claims and issued the '943 Patent's reexamination certificate on July 8, 2022. (*Id.*)

11

**C. Dafni Refuses to Drop Its '943 Patent Infringement Claim Despite Knowing that Ontel Ceased Manufacturing and Selling the Accused Simply Straight Products Prior to Issuance of the '943 Patent Reexamination Certificate.**

On July 20, 2022, Ontel requested that Dafni dismiss its infringement claim in view of the '943 Patent's reexamination amendments and the fact that Ontel no longer manufactures or sells the accused products. (**Exhibit C**, Nikkila 2022-07-20 Email.) Specifically, Ontel's last sale of any version of the Simply Straight brush took place on November 30, 2021 and Ontel has not sold or offered to sell any version of the accused products since that date. (Kinsey Declaration at ¶5.) Additionally, Ontel placed its last purchase order (with its manufacturing partner) for the manufacture of the of the accused Simply Straight products on June 7, 2016—*more than 6 years before the '943 Patent emerged from reexamination*. (*Id*. at ¶3.) Furthermore, Ontel received its final shipment of the accused products from Ontel's manufacturing partner on September 17, 2016. (*Id*. at ¶4.) Despite this evidence, Dafni refused to dismiss Count II on the stated basis that certain, ***non-asserted*** claims of the '943 Patent were—*according to Dafni*—not substantively amended during reexamination and therefore fail to trigger intervening rights. (Dkt. No. 151.) Recognizing the flaws in its infringement claim, Dafni issued new infringement contentions on September 30, 2022 asserting infringement of two previously-unasserted claims in an effort to avoid Ontel's statutory intervening rights. (*See* 35 U.S.C. § 252.) Specifically, Dafni now asserts infringement by Ontel of claims 1-4,

12

6, 8-19, 22-33, 38-39, 41-43, 46-47, 49-50, 54-60, 62-68, 73-74, 76-78, 81-82, 84-85, and 89-91 of the reexamined '943 Patent ("Currently Asserted Claims"). (**Exhibit D**, Dafni's September 2022 Infringement Contentions at 6.) However, as stated previously, Claims 1-3, 6, 8, 9, 10[4] and 11-19 were all substantively amended, and all claims after Claim 22 were newly added during the '943 EPR proceedings. (Dkt. No. 138-6.) As such, absolute intervening rights clearly apply to these claims.

Turning now to claim 4 from the original '943 Patent, which was rewritten from dependent to independent form without additional alteration during reexamination. Specifically, claim 4 was rewritten to encompass rejected original claim 1. However, the plain language of this claim still requires that "at least some of the plurality of spacers are ***connected on top*** of corresponding heating elements…" (**Exhibit E**, U.S. Pat. No. 9,578,943 Reexamination Certificate.) Tellingly, Dafni previously dropped its original allegations regarding claim 4 due to the positions it took with respect to the prior art during the IPRs—positions which directly contradict its revived infringement claim against Ontel's Simply Straight products. Additionally, Dafni's arguments during the '906 Patent IPR proceedings[5]—regarding the meaning of the exact same "connected on top"

---

[4] Additionally, newly-asserted claim 10 was rewritten from dependent form to independent form and, as detailed below, was also further substantively amended for purposes of patentability.

[5] As noted above, the '943, '906, and '562 Patents are all members of the same patent family and share a common specification and figures. Of course, as the Federal

language used in claim 4 of the '943 Patent—further undercut any arguments that Dafni might try to make regarding Ontel's accused products.

During the '943 Patent's reexamination, for example, Dafni specifically argued that the prior art's disclosure of heat-insulating spacers that protrude up and through the middle of the heating elements—just as all of Ontel's accused products are configured—***do not*** meet claim 4's requirement that the spacers be "connected on top":

> Claim 4 recites, "wherein at least some of the plurality of spacers are connected on top of corresponding heating elements of the plurality of heating elements." […] To be clear, Choi's spacers are not connected on top of heating elements as proposed by the Office Action. Taking Fig. 19 as an example, heat shield unit parts (442) are inserted into a long heat transfer unit (441) that holds them all in place.

(**Exhibit F**, Dafni's Response to 2021-10-04 Office Action at 43.) Specifically, Figure 19 of Choi illustrates the following spacer configuration:



_____

Circuit has repeatedly confirmed, statements made during the prosecution of related patents can be directly relevant to the construction of claim terms in a given patent. *See*, *e.g.*, *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1343 n.5 (Fed. Cir. 2015).

**Choi Figure 19**
[*Showing spacers 442 protruding up and through heating elements 441*]

(**Exhibit G**, Choi Prior Art Reference at Fig. 19.) As shown, the spacers 442 project

up through the middle of the heating elements 441 and out an opening in their upper

surfaces. Furthermore, when presented with this prior art spacer configuration, the

PTAB specifically held that Choi does <u>not</u> "disclose spacers that are ***connected on***

***top*** of heating elements." (**Exhibit H**, '906 IPR Final Written Decision at 85,

emphasis added.)

Additionally, with respect to even the broader, related claim requirement that

the heat-insulating spacers are "*configured* on top" of heating elements, Dafni

argued and the PTAB accepted that "[s]pacers that are configured on top of their

heating elements **are not** going all the way through the heating element . . . ."[6]

(**Exhibit H**, '906 IPR Final Written Decision at 13, emphasis added.) Dafni even

provided examples of a "spacer extending all the way through a heating element and

contacting the top of a heating element, and argues a person of ordinary skill in the

art ***would not consider the spacer to be configured on top*** of the heating unit in any

_____

[6] In accordance with Federal Circuit precedent, Dafni's IPR-related statements are both relevant to claim interpretation and can even operate to bind Dafni to narrower claim interpretation in a subsequent proceeding. *See, e.g., Aylus Networks, Inc. v. Apple Inc.,* 856 F.3d 1353, 1361 (Fed. Cir. 2017). Of particular relevance to this case, the Federal Circuit has explained that "[t]he rule in *Aylus* 'ensure[s] that claims are not argued' by the patentee 'one way in order to maintain [the claims'] patentability and in a different way against accused infringers.'" ) *CUPP Computing AS v. Trend Micro Inc.*, 2022 WL 16954357, at *4 (Fed. Cir. Nov. 16, 2022).

of these examples." (*Id.* at 14, emphasis added). These examples are depicted below in comparison with Ontel's accused Simply Straight products.

| Dafni's examples of non-"connected on top" spacers protruding up and through the top of a heating element | Dafni's operative infringement contentions, which contradictorily assert that Ontel's Simply Straight products include spacers "connected on top" of heating elements |
|---|---|
|  |  |

Despite the comparison depicted above and Dafni's prior statements regarding the meaning of "connected on top," Dafni now claims that Ontel's accused Simply Straight products meet the "connected on top" requirement of claim 4. In one instance, Dafni argues the "connected/configured on top" requirement is <u>not</u> met ***to its benefit*** in proceedings before the USPTO, while now asserting that the same requirement <u>is</u> met by the similar spacer configuration at issue in this case. The disconnect between these two positions is further underscored by Dafni's prior decision to drop claim 4 from this case prior to its September 2021 infringement

contentions. Dafni cannot be permitted to argue contradictory positions in different forums—especially where the alleged validity of claim 4 over the prior art depends directly on Dafni's prior position.

## IV.   ARGUMENT

### A. Summary Judgment Legal Standard.

"A moving party is entitled to judgment as a matter of law where there is no genuine issue as to any material fact." *MonoSol Rx, LLC v. Biodelivery Scis. Int'l, Inc.*, 2015 WL 5679891, at *8 (D.N.J. Sept. 25, 2015)(*citing* Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The moving party maintains the burden to demonstrate an absence of a genuine issue of material fact. *Id.* (*citing Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 305 (3d Cir.1999)). Once the moving party has satisfied its burden, "the opposing party must identify 'specific facts which demonstrate that there exists a genuine issue for trial.'" *Id.* (internal citation omitted). However, not all issues of fact are sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, issues of fact are genuine and sufficient to defeat summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Moreover, "the nonmoving party cannot rest upon mere allegations; he must present actual evidence that creates a genuine issue of material fact." *MonoSol*, 2015

17

WL 5679891, at \*8 (*citing* Fed. R. Civ. P 56(e); *Anderson*, 477 U.S. at 249). "[I]t is not the court's role to make findings of fact, but to analyze the facts presented and determine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (*citing Anderson*, 477 U.S. at 249).

### B. Intervening Rights Legal Standard.

"The doctrine of intervening rights first developed as courts recognized that permitting substantive changes to the scope of patent claims through post-issuance procedures left the door open for gross injustice where a third party, having already begun to make, use, or sell a given article, finds its previously lawful activities rendered newly infringing under a modified patent." *MonoSol*, 2015 WL 5679891, at \*8 (*citing Marine Polymer Technologies, Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1361–62 (Fed.Cir.2012)(en banc)). The concept of intervening rights extends to reexamined patents under 35 U.S.C. § 307(b), which provides:

> ***Any proposed amended or new claim*** determined to be patentable and incorporated into a patent ***following a reexamination proceeding*** will have the same effect as that specified in section 252 for reissued patents on the right of any person who made, purchased, or used within the United States, or imported into the United States, anything patented by such proposed amended or new claim, or who made substantial preparation for the same, prior to issuance of a certificate under the provisions of subsection (a) of this section.

18

35 U.S.C.A. § 307. As such, "only 'amended' or 'new' claims in a reexamined patent give rise to the defense of intervening rights." *MonoSol*, 2015 WL 5679891, at *9 (*citing Marine Polymer*, 672 F.3d at 1363).

Once a party establishes that the claim(s) granted or confirmed upon reexamination are "new" or otherwise "amended", the Court must then determine whether the amendment is a "substantive change." *Id.* This is because "[u]nless a claim granted or confirmed upon reexamination is identical to an original claim, the patent can not be enforced against infringing activity that occurred before issuance of the reexamination certificate." *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997). "'Identical does not mean verbatim, but means at most without substantive change." *Id.* (*citing Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 811, 827-28, 221 USPQ 568, 575 (Fed. Cir. 1984)). Therefore, if the claim has not been substantively changed, the doctrine of intervening rights does not apply. *Id.* Whether an amended claim is identical in scope to the original claims, or substantively changed, is a question of law appropriate for the Court's consideration. *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998).

### C. Ontel is entitled to Summary Judgment under the Intervening Rights Doctrine Because Plaintiffs Substantively Amended the Asserted Claims of the '943 Patent During Reexamination.

In order to determine whether a claim amendment is substantive, courts "analyze the claims of the original and the reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information." *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998) ("Laitram IV"). "Like with claim construction, these reexamined claims 'are not to be interpreted by adding limitations appearing only in the specification.'" *MonoSol*, 2015 WL 5679891, at \*9 (*quoting Electro Med. Sys. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994)). The overall focus is "on whether the amended claims are of a 'different scope' than the original claims." *Id.* (*citing Laitram IV*, 163 F.3d at 1348).

The scope of a claim "is substantively changed where, for example, the amended claim is narrower in scope than the original claim." *Eberle v. Harris*, 2010 WL 6281563, at \*6 (D.N.J. June 30, 2010)(*citing Laitram IV*, 163 F.3d at 1349). Here, it is clear that the amended claims are narrower in scope than the original claims. Specifically, Dafni added additional narrowing limitations that narrowed not just the language of the claims, but the scope as well. *Id.* By way of example, Dafni made the following amendments—depicted as italicized and underlined text—to

20

independent claims 1 and 15 narrowing their scope, as well as the scope of the corresponding dependent claims:

Claim 1:

1. A hairbrush, comprising:

a heating plate extending over a face of the hairbrush;

a plurality of heating elements thermally coupled to the heating plate and protruding from only the face of the hairbrush, the plurality of heating elements defining a hair treating area disposed on at least a part of the hairbrush's face at a specified density, the plurality of heating elements arranged in a plurality of lengthwise rows, each of the plurality of lengthwise rows including a number of the plurality of heating elements, ***wherein a number of the heating elements in at least one of the lengthwise rows is different than a number of heating elements in at least one other of the lengthwise rows***;

wherein, for each of the plurality of lengthwise rows, the heating elements thereof are offset relative to the heating elements in an adjacent one of the plurality of lengthwise rows;

a plurality of heat insulating spacers projecting outwardly from at least some of the plurality of heating elements, thereby providing a space between the plurality of heating elements and a user's scalp during use; and

a plurality of heat insulating elongate peripheral spacers disposed at least around a portion of the hair treating area of the hairbrush.

Claim 15:

15. A hairbrush, comprising:

a plurality of heating elements protruding from a face of the hairbrush, the plurality of heating elements defining a

21

hair treating area disposed on at least a part of the hairbrush's face at a specified density;

wherein the plurality of heating elements define a plurality of lengthwise rows and a plurality of undulating paths therethrough in a direction transverse to the plurality of lengthwise rows, *__wherein a number of the heating elements in at least one of the lengthwise rows is different than a number of heating elements in at least one other of the lengthwise rows__*;

a plurality of heat insulating spacers projecting outwardly from at least some of the plurality of heating elements, thereby providing a space between the plurality of heating elements and a user's scalp during use; and

a plurality of heat insulating elongate peripheral spacers disposed at least around a portion of the hair treating area of the hairbrush.

(**Exhibit E**, U.S. Pat. No. 9,578,943 Reexamination Certificate.) The additional language, "wherein a number of the heating elements in at least one of the lengthwise rows is different than a number of heating elements in at least one other of the lengthwise rows," is an additional requirement and thus works to limit the scope of the Initial Asserted Claims as the requirement was not previously asserted in the original claims. Moreover, these amendments were made to distinguish over prior art, notably Choi, Hattori and Gress. In this scenario, courts have held that such amendments to distinguish over prior art are properly considered substantive in nature. *See, e.g., MonoSol*, 2015 WL 5679891, at *13 ("[T]hat this amendment had the effect of distinguishing over prior art, […] combined with the fact that the '292 patent's original claims were rejected upon reexamination due to being unpatentable

[…], among other prior art, is 'highly influential' evidence demonstrating that the amendment was substantive.")(*quoting Laitram IV*, 163 F.3d at 1348); *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1348 (Fed. Cir. 1998)("…it is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment…"); *LMT Mercer Grp., Inc. v. Maine Ornamental, LLC*, 2014 WL 284238, at *10 (D.N.J. Jan. 24, 2014)("…other courts have found that changes made in the reexamination process to avoid anticipation by specific prior art are properly considered substantive changes, supporting an intervening rights defense."). As such, Dafni's amended claims are substantive and Ontel is therefore entitled to absolute intervening rights. Moreover, because Ontel ceased manufacturing and selling the Accused Products prior to the issuance of the '943 Patent reexamination certification, there is no infringement as a matter of law. 35 U.S.C. §§ 307, 252, and 271.

### D. Dafni's Proposed Reliance on Claims 4 and 10 Does Not Save Its Meritless Infringement Claim Based on the Reexamined '943 Patent.

Dafni's September 30, 2022 infringement contentions now add allegations relating to previously-unasserted claims 4 and 10 in a futile attempt to preserve its '943 Patent infringement claim. Dafni's reliance on such claims—which Dafni itself previously believed Ontel did <u>not</u> infringe—fails to change the analysis.

First and as noted above, claim 10 was not ever previously asserted against Ontel in this action. The reason for this is both clear and demonstrated by Dafni's substantive amendments to claim 10 during reexamination. Among other things, original claim 10 appears to have included an improper claim-dependency recitation and further lacked proper antecedent basis in connection with a key limitation. Such issues made original claim 10 ambiguous and indefinite and, combined with Dafni's inability to demonstrate infringement by the accused products of the limitations actually set forth in the claim,[7] motivated Dafni's decision <u>not</u> to assert the claim against Ontel at any point prior to reexamination.

Original claim 10 appears to have mistakenly included language establishing dependency from claim 1 rather than claim 2. Claim 2, as opposed to claim 1, actually includes the limitation to which original claim 10's wherein clause refers— namely, a "specified distance between protruding ends of the plurality of heating elements and the user's scalp." Claim 1 lacks any recitation of such a limitation and therefore original claim 10's stated dependency from claim 1—rather than intervening dependent claim 2—made the claim indefinite. This error gave rise to further indefiniteness issues with respect to claim 10 because the original claim did

---

[7] Dafni's September 2022 infringement contentions—again, the first to include any allegations relating to claim 10—both fail to demonstrate that the accused products meet the recited limitations and do not deal with the clear indefiniteness issues that continue to plague the claim.

not include any antecedent basis in connection with its recitation of "the specified distance between protruding ends of the plurality of heating elements and the user's scalp"—and claim 1, of course, does not specify any such distance. During reexamination, however, Dafni sought to address these flaws by flatly changing the claim's understood dependency and amending the claim language to circumvent the antecedent basis issue and thus its scope. (*See* **Exhibit E**, U.S. Pat. No. 9,578,943 Reexamination Certificate.) In view of Dafni's unambiguous changes to the claim's language, dependency, and attendant scope, claim 10—like the complete set of Previously Asserted Claims—was indeed substantively amended during reexamination and therefore gives rise to absolute intervening rights. *See R+L Carriers, Inc. v. Qualcomm, Inc.*, 801 F.3d 1346, 1349 (Fed. Cir. 2015) ("To determine whether substantive changes have been made, we consider 'whether the scope of the claims are identical, not merely whether different words are used.'").

Dafni's proposed reliance on claim 4 is similarly insufficient to maintain an infringement claim based on the '943 Patent. As already detailed above, Dafni's representations (to the USPTO) regarding the meaning and scope of the "connected on top" requirement remove any legitimate basis for Dafni to now assert that Ontel's accused Simply Straight products meet this limitation. Dafni's own previously-stated positions—adopted to preserve claim validity—demonstrate that the accused Ontel products fail to include spacers "***connected on top*** of corresponding heating

elements," as expressly required by claim 4. This reality is further confirmed by Dafni's previous decision to withdraw its original infringement allegations based on claim 4 during the pendency of the USPTO proceedings. Although Dafni must recognize the contradiction between its validity and infringement positions, it has chosen to revive claim 4—now that all of the USPTO proceedings have concluded—as a last-ditch attempt to maintain its '943 Patent infringement claim. The Court should not allow such gamesmanship and should rule, *consistent with Dafni's own stated positions*, that there is no basis for an assertion that Ontel's accused products include spacers "connected on top of corresponding heating elements."

## V.   CONCLUSION

WHEREFORE, as stated herein, Ontel respectfully requests that this Court grant its Motion and enter an order dismissing Count II of the Corrected First Amended Complaint.

Respectfully submitted,

Date:  November 28, 2022

By:  /s/ *Peter E. Doyle*
DICKINSON WRIGHT PLLC
Peter E. Doyle, Bar No. 31642012
2600 W. Big Beaver Rd., Suite 300
Troy, MI 48084
Tel: (248) 205-5978
Fax: (844) 670-6009
PDoyle@dickinsonwright.com

John S. Artz (*pro hac vice*)
JSArtz@dickinsonwright.com
350 S. Main Street, Suite 300
Ann Arbor, MI 48107
Tel: (734) 623-7075
Fax: (844) 670-6009

Steven A. Caloiaro (*pro hac vice*)
SCaloiaro@dickinsonwright.com
100 West Liberty Street, Suite 940
Reno, Nevada  89501-1991
Tel: (775) 343-7500
Fax: (844) 670-6009

*Attorneys for Defendant*